UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FINANCIAL RESOURCES
  GROUP, LLC. et al.,

    Plaintiffs,

v.

MILLER, CANFIELD,
  PADDOCK & STONE, PLC, et al.,

    Defendants.
                                      /

Case No. 2:09-cv-14916

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT** (docket No. 9)

Plaintiffs, Financial Resources Group, LLC (FRG), and Anthony Merlo (collectively "Plaintiffs"), filed a legal malpractice claim against Miller, Canfield, Paddock, & Stone**,** PLC ("Miller Canfield"), and John A. Campbell, a former partner at Miller Canfield (collectively, "Defendants"), on November 20, 2009.[1] The three-count complaint alleges that Defendants committed negligence, professional negligence, and fraud, and that as a direct and proximate result, Plaintiffs suffered significant damages. Compl. ¶¶ 30-37. Miller Canfield moved for summary judgment on June 6, 2010, asserting that Plaintiffs' claims are barred by the statutes of limitations for legal malpractice and fraud, and that Plaintiffs' claims are also barred by the wrongful-conduct rule. For the following reasons, the Court agrees that Plaintiffs' claims are time barred and will enter summary judgment in favor of Miller Canfield.

---

[1] Campbell has not been served nor has he appeared in the matter.

**INTRODUCTION**

Merlo worked for most of his professional career as a business consultant. *See* Merlo Plea Agreement, Docket No. 9, ex. 6 at 17.[2] Between 1995 and 2002, however, Merlo, along with Campbell, became involved in promoting fraudulent off-shore tax shelters. *Id*. Subsequently, on March 6, 2008, Merlo and Campbell were indicted for conspiracy to defraud the government. *See* Campbell/Merlo Indictment, ex. 3. In 2008, Campbell pled guilty to "conspiring to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes." *See* Campbell Plea Agreement, ex. 5. On May 22, 2009, Merlo pled guilty to the same charge. *See* Merlo Plea Agreement, ex. 6.

**FACTS**

In 1995, Merlo entered into a business relationship with his then next-door-neighbor, Peter Peggs, and others to begin consulting work related to the sale of financial instruments and insurance. Compl. ¶ 6, ex. 1. Subsequently, Merlo, Peggs, and others formed a company called Cadeceus Life Insurance Company, which was renamed Security Trust Insurance Company ("Security Trust") in 1999. *Id*. at ¶ 7; Merlo Plea Agreement, ex. 6 at ¶ 2. Merlo served as chairman of Security Trust in 1999 and as a non-executive director from 1995 through 2001. *See* Merlo Plea Agreement, ex. 6 at ¶ 2. Merlo was also the managing partner and, except for an approximately six-month period of time, the sole member of FRG, a limited liability company incorporated in the United States Virgin Islands.

---

[2] Unless otherwise specified, all further references to exhibits can be found at Docket No. 9.

Compl. ¶¶ 2-3, ex. 1; Merlo Dep. Tr., ex. 2 at 26, 28.

In 1999, Merlo met with Craig Stone, who was interested in identifying and marketing new financial products. Compl. ¶ 8, ex. 1; Merlo Dep. Tr., ex. 2 at 53-54. One product Stone was interested in marketing was a Security Trust tax-shelter product known as Loss of Income (LOI) insurance. *See* Merlo Dep. Tr., ex. 2 at 53-54. Stone wanted to obtain an opinion letter from a law firm regarding the product prior to marketing it, however, because it had been suggested that the product might run afoul of IRS regulations. *Id.* at 53-54.

In 1999, Plaintiffs retained Miller Canfield to procure an opinion letter regarding the LOI insurance.[3] *Id.* at 71-72. It is undisputed that Campbell, who was a partner at Miller Canfield until 2002, authored the opinion letter.[4] In his plea agreement on the conspiracy charges to which Campbell and Merlo both pled guilty, Campbell stipulated that the letter was an overt act committed in furtherance of the conspiracy. *See* Campbell Plea Agreement, ex. 5 at 16.

A peer review of the opinion letter was conducted by other Miller Canfield attorneys. *See* Merlo Dep. Tr., ex. 2 at 91-93. Subsequently, Plaintiffs participated in selling the LOI insurance between December 1999 and the spring of 2002, when Merlo ended his business relationship with Security Trust. *Id.* at 93-94. It is undisputed that in early 2002,

---

[3] Stone had a longstanding relationship with Campbell and Miller Canfield. Compl. ¶ 13, ex. 1. Although it is asserted that Stone, Peggs, and Campbell took the lead in preparing the opinion letter, FRG paid half of the legal costs associated with researching and preparing the opinion letter. *Id.* at ¶¶15-16; Merlo Dep. Tr., ex. 2 at 90. It is undisputed that Miller Canfield never represented Merlo in an individual capacity.

[4] Although not asserted in the complaint, Merlo alleged in his deposition that the claims of negligence, professional negligence and fraud, are also based on Campbell's opinion letter regarding deferred private annuities (DPA), another of Security Trust's tax shelter products. *See* Merlo Dep. Tr., ex. 2 at 31.

the legal relationship between Plaintiffs and Miller Canfield also ended.

The following time-line of events subsequent to the severing of Merlo's relationships with Security Trust and Miller Canfield is largely undisputed:

1. In 2005, Merlo learned that the United States Attorney's office in Ohio had indicted individuals for taking an improper or fraudulent deduction for the LOI insurance sold to them by the Plaintiffs. Compl. ¶ 19, ex. 1.

2. In December 2006, Merlo was told by an acquaintance that the IRS wanted to speak with him regarding their investigation into Security Trust and the LOI insurance; Merlo called the IRS around that time. Compl. ¶¶ 20-21, ex. 1.

3. Around January of 2007, Merlo retained counsel after discovering that he was a "subject" in an investigation by the Department of Justice. *See* Merlo Dep. Tr., ex. 2 at 138-39.

4. In October of 2007, Peggs and Stone, along with Robert Larsen, were indicted for conspiring to defraud the IRS by promoting and selling the LOI tax shelter. *See* Peggs/Stone/Larsen Indictment, ex. 9.

5. In January of 2008, Merlo was told that he was a target in a Grand Jury investigation . Compl. ¶ 25, ex. 1.

6. On March 6, 2008, Campbell and Merlo were indicted for conspiracy to defraud the government in connection with the sale of the fraudulent LOI tax shelters. *See* Campbell/Merlo Indictment, ex. 3. Campbell pled guilty the next day. *See* Campbell Plea Agreement, ex. 5.

7. On April 24, 2009, Merlo entered into a plea agreement with the government. *See* Merlo Plea Agreement, ex. 6.

8. On May 22, 2009, Merlo's guilty plea was entered by the United States District Court for the Western District of Michigan.

9. On November 20, 2009, Plaintiffs filed the instant suit against Defendants alleging that Defendants committed negligence, professional negligence, and fraud, and that as a direct and proximate result Plaintiffs suffered significant damages, including criminal indictment, lost income, loss of business, legal fees, penalties, and emotional damages. Compl. ¶¶ 30-37, ex. 1.

## LEGAL STANDARD

Summary judgment is appropriate under Fed. R. Civ. P. 56 if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992). A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993). Courts consistently hold that summary judgment may be granted on statute of limitations grounds where there is no issue of material fact. *See Wells v. Norfolk S. Ry.*, No. 96-5267, 1997 U.S. App. LEXIS 4347, *5-*6

(6th Cir., March 6, 1997); *Harner v. Prudential-Bache Sec.*, No. 92-1353, 1994 U.S. App. LEXIS 25266, *5 (6th Cir. Sept. 9, 1994).

## ANALYSIS

A.  Plaintiffs' Claims for Negligence and Professional Negligence are Barred by the Statute of Limitations for Legal Malpractice

Miller Canfield argues that Plaintiffs' negligence and professional negligence claims are barred by the statute of limitations for legal malpractice. Plaintiffs assert that the statute of limitations period did not begin to run until May 22, 2009, the date on which Merlo's guilty plea was entered by the U.S. District Court for the Western District of Michigan. The Court finds, as a matter of law, that the action is time-barred and grants summary judgment in favor of Miller Canfield.

Under Michigan law, a claim for legal malpractice must be brought within two years from the time that the claim accrues. Mich. Comp. Laws § 600.5805(6). A cause of action for malpractice accrues at the time that the lawyer or law firm "discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." Mich. Comp. Laws § 600.5838(1).

Michigan law also provides an exception to this limitation. The "discovery rule" allows a plaintiff to bring a claim otherwise barred by the two-year statute of limitations within six months of the date the plaintiff discovers or should have discovered the existence of the claim. Mich. Comp. Laws § 600.5838(2). Under Michigan law, to make out a claim for legal malpractice the plaintiff must show: 1) the existence of an attorney-client relationship; 2) negligence in the legal representation of the plaintiff; 3) that the negligence was the

6

proximate cause of the injury; and 4) "the fact and extent of the injury alleged." *Coleman v. Gurwin*, 443 Mich 59, 63 (1993).

Plaintiffs argue that the statute of limitations did not begin running until all elements of the Plaintiffs' claim existed. Plaintiffs assert that this did not occur until May 22, 2009, because the "fact and extent" of their injuries were not fixed until after Merlo's guilty plea was entered. Plaintiffs base this argument on the rule from tort law that "until a plaintiff suffers damages, a tort claim does not exist, cannot be asserted, and therefore, does not accrue so as to trigger the running of the statute of limitations." *Luick v. Rademacher*, 129 Mich. App. 803, 806 (1983).

The Michigan Supreme Court has expressly rejected this argument as it applies to legal malpractice claims, holding that:

> Previous case law has confused the application of [§ 5838] by inserting traditional tort concepts of "accrual" into the clear statutory scheme. The normal rule in tort law is that a cause of action does not accrue until all elements of the tort exist. Section 5838 expressly rejects this rule by providing that accrual occurs without regard to whether the client's malpractice claim is ripe.

*Gebhardt v. O'Rourke*, 444 Mich. 535, 542 (1994) (plaintiff's cause of action began to accrue on last day services were rendered by plaintiff's attorneys, not when plaintiff's judgment of acquittal became final). Thus, under § 5838, the Michigan Supreme Court has unequivocally held that "[a]ccrual of a malpractice action, for purposes of the two-year limitations period occurs on the last day of professional service."[5] *Id.* at 543.

---

[5] In doing so, the Michigan Supreme Court also found that "interpretations of the statute that suggest that a plaintiff has two years to file suit after discovering the claim render the six-month discovery provision. . .superfluous." *Gebhardt*, 444 Mich. at 542 fn. 7.

It is undisputed that Miller Canfield last rendered services to Plaintiffs in 2002. Thus, as a matter of law, the claim accrued in 2002 and the statute of limitations bars any claim for legal malpractice after 2004, unless the exception provided by the discovery rule permits the claim to proceed. The Court finds in this case that it does not.

The discovery rule allows an action barred by the two-year statute of limitations to be brought within six months from the time the plaintiff "discover[ed] or should have discovered the existence of the claim." Mich. Comp. Laws § 600.5838(2). Plaintiffs argue that they could not and should not have discovered the existence of a legal malpractice claim until after the guilty plea was entered on May 22, 2009 because that was when the "fact and extent" of harm became certain. Miller Canfield argues that Plaintiffs should have discovered the possibility of a legal malpractice claim at numerous junctures prior to Merlo's guilty plea being entered.

The Michigan Supreme Court has held that under the discovery rule "a plaintiff's cause of action accrues when, on the basis of objective facts, the plaintiff should have known of an injury."[6] *Moll v. Abbott Laboratories*, 444 Mich. 1, 18 (1993). Further, the plaintiff only need know that a cause of action is "possible," not "likely." *Gebhardt*, 444 Mich. at 545. Under this standard, harm, for purposes of the last two elements of a legal malpractice claim, "is established not by the finality of the damages, but by the occurrence of identifiable and appreciable loss." *Id.* Michigan courts have stated that:

---

[6] The Michigan Supreme Court acknowledged that the question of whether a plaintiff knows of a cause of action is a subjective determination, but whether a plaintiff should have known requires an objective test. The court further reasoned that allowing a subjective test to control when an injury was discovered for purposes of the discovery rule would "allow a. . .plaintiff to legally forestall suit until the time [plaintiff] is convinced that [he or she] is injured." *Moll*, 444 Mich. at 17.

8

> The cause of action arises. . .before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue. . . .Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct.

*Hayden v. Green,* 166 Mich. App. 352, 363 (1988), *adopted by*, 431 Mich. 878 (1988) (internal citations omitted).[7] "Once an injury and its possible cause is known, the plaintiff is aware of a possible cause of action." *Gebhardt*, 444 Mich. at 545 (citing *Moll*, 441 Mich. at 24).

Based on objective facts, it is undeniably clear that Plaintiffs should have discovered the existence of an ascertainable injury well in advance of Merlo's guilty plea being entered on May 22, 2009. Although Plaintiffs now attempt to argue that there was not an injury until Merlo entered a guilty plea, their own complaint asserts that they suffered significant damages prior to that date. The complaint states that "as a direct and proximate result of Defendants' negligence and fraud the Plaintiffs suffered significant damages" including: the criminal indictment on March 6, 2008; lost income; loss of business; legal fees; penalties; emotional damages; exemplary damages for the acts of fraud; and other damages to be determined. Compl. ¶ 37, ex. 1. Thus, although the extent of damages stemming from the guilty plea was not fixed until May 22, 2009, Plaintiffs' own complaint asserts that damages

---

[7] Plaintiffs incorrectly rely on *Hayden* for the proposition that Plaintiffs did not have a claim prior to the guilty plea for purposes of the two-year statue of limitations. The case, however, discusses the existence of a claim for purposes of the discovery rule.

9

were suffered as early as the criminal indictment on March 6, 2008.[8] Therefore, no genuine issue of fact exists regarding whether Plaintiffs suffered some "appreciable and actual harm" flowing from any alleged attorney negligence before May 22, 2009. *See Hayden,* 166 Mich. App. at 364 (Hood, J., dissenting) (plaintiff suffered appreciable harm before application for leave to appeal was denied because dismissal of action by district court "deprived plaintiff of any back pay he could have received at that time. . .[and in] addition he incurred time and expense in contacting other counsel to remedy the situation, and even had to pay the court reporter to allow the appeal to proceed."); *Luick,* 129 Mich. App. at 808-09 (plaintiff's own complaint, which asserted suffering of mental anguish and anxiety, damage by loss of real and personal property and requirement to retain substitute counsel, evidenced that plaintiff suffered appreciable harm before denial of leave to appeal); *Adell v. Sommers, Schwartz, Silver & Schwartz*, PC, 170 Mich. App. 196, 208-09 (1988) (plaintiff's cause of action accrued under discovery rule when he was notified by IRS of tax deficiency, not when plaintiff settled and paid IRS).

The present case is distinguishable from *Dowker v. Peacock*, 152 Mich. App. 669 (1969), cited by the Plaintiffs in support of their argument. In *Dowker*, the defendant law firm filed both a claim of lein and a lawsuit in circuit court against a third-party. *Id.* at 671. The lein was defective and was withdrawn by defendant in 1980, but the lawsuit continued. *Id.* Although defendants stopped representing the plaintiff in 1982, the plaintiff went to trial on the claim, with new counsel, in June of 1984. *Id.* Shortly after trial began, the third-party

---

[8] Further, only a day after Merlo and Campbell were indicted, Campbell, who had written the opinion letter upon which Plaintiffs base their claims, pled guilty and admitted that the letters were an overt act committed in furtherance of the conspiracy. *See* Campbell Plea Agreement, ex. 5 at 16.

filed for bankruptcy, listing plaintiff as an unsecured creditor, and the circuit court trial was removed from the calendar without reaching a conclusion. *Id.* The court found that plaintiff's claim for malpractice was timely under the discovery rule, because although the plaintiff knew that defendants had filed a defective lien in 1980, he did not suffer any certain harm until the third party filed for bankruptcy. The court reasoned that, until that point, the case had the potential to restore the plaintiff back to his original financial position. *Id.* at 674.

In this case, however, the Plaintiffs' own complaint alleges that Plaintiffs suffered appreciable harm that had no other remedial avenue, including damages stemming from the criminal indictment on March 6, 2008. Thus, Plaintiffs could have and should have discovered their claim well in advance of Merlo's guilty plea, and the discovery rule does not protect their claim. Therefore, as a matter of law, Plaintiffs filed their claim after both the two year statute of limitations and the six-month discovery rule statute of limitations had lapsed. The Court grants summary judgment in favor or Miller Canfield under Rule 56.

B. Plaintiffs' Fraud Claim is Barred by the Statute of Limitations

Miller Canfield also assert that Plaintiffs' fraud claim is barred by the statute of limitations for fraud under Michigan law. Plaintiffs appear to concede on this issue and do not rebut this assertion in their response brief. The Court agrees with Miller Canfield and holds that, as a matter of law, Plaintiffs claims are barred by the statute of limitations.

Generally, Michigan courts have held that fraud allegations have a six-year statute of limitations pursuant to Mich. Comp. Laws § 600.5813.[9] *See Boyle v. Gen. Motors Corp.*,

---

[9] Mich. Comp. Law §600.5813 provides that "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards

468 Mich. 230 231-32 (2003); *Blue Cross & Blue Shield v. Folkema*, 174 Mich. App. 476, 481 (1988) ("In actions for fraud or misrepresentation the applicable limitation period is six years"). Under Mich. Comp. Laws § 5827 "a claim accrues when the wrong upon which the claim is based was done regardless of the time when damage results" unless §§ 5829 to 5838 apply. *Boyle*, 468 Mich. at 231. The Plaintiffs do not claim that any of the foregoing sections apply here. "Wrong", as used in this provision, has been held to occur when the plaintiff was harmed by the defendant's actions, and not when the defendant acted in any particular fashion. *Stephens v. Dixon*, 449 Mich. 531, 534 (Mi. 1995); The discovery rule does not apply in fraud cases, and Michigan Courts have held that the plaintiff is harmed when they "did not receive what they expected to receive." *Boyle*, 468 Mich. at 231-32; *Mayhall v. A.H. Pond Co.*, 129 Mich. App. 178, 185 (1983) (holding that the injury suffered by the victim of fraud occurs when "the victim did not receive what he expected to receive").

Plaintiffs assert that Defendants committed fraud by "authoring and peer-reviewing an opinion letter" regarding the LOI product "that defrauded the U.S. Government, the U.S. taxpayers and purchasers of the Plaintiffs' LOI product" and by "causing Plaintiffs, and purchasers of the LOI product to rely on Defendants fraudulent Opinion Letter to their detriment." Compl. ¶ 34, ex. 2. Under Michigan law, Plaintiffs were harmed by defendant's actions when Plaintiffs acted in reliance on these letters, not when Plaintiffs discovered the fraud. *See Boyle*, 468 Mich. at 231-32 (rejecting the discovery rule in fraud cases and holding that wrong was done when plaintiffs took over existing car dealership that they later learned to be undercapitalized, not when plaintiffs discovered that dealership had been

---

unless a different period is stated in the statutes."

undercapitalized); *Warren v. Cole*, 15 Mich. 265 (1867) (plaintiff was injured when he purchased the right to sell two varieties of soap invented by defendant, not when he discovered that only one variety was patented); *See also First Nat'l Bank v. Steel*, 146 Mich. 308, 314 (1906) ("plaintiff was damnified, and its cause of action accrued" as soon as it discounted notes and accepted worthless shares of stock in reliance on fraudulent representations); *Briggs v. Brushaber*, 43 Mich. 330, 384 (1880) (plaintiff "was damnified" as soon as she "had been induced to part with her money for something less valuable").

Based on the foregoing authorities, the latest that the fraud alleged in this case could have occurred was 2002, when it is undisputed that Plaintiffs ceased selling the LOI products and severed their relationship with Miller Canfield. The six-year statute of limitations, therefore, bars any claim initiated after 2008.[10] The Court grants summary judgment for Miller Canfield, and finds that as a matter of law, the statute of limitations bars Plaintiff's fraud claim.

### C. The Court Will Not Reach the Issue of the Wrongful Conduct Rule

Miller Canfield further asserts that the Plaintiffs' claims are barred by the wrongful-conduct rule, a common law maxim, which provides that "a person cannot maintain an

---

[10] Miller Canfield argues that §5805(10), which states that actions involving "injury to a person or property" have a three year statute of limitations, should apply to this claim, instead of §5813. Miller Canfield asserts that fraud is a common law tort and in *Local 1064, RWDSU AFL-CIO v. Ernst & Young*, 449 Mich. 322, 327 (1995), the court held that § 5805 "prescribes the limitation periods for traditional common-law torts, regardless of whether the damages sought are pecuniary or physical." No Michigan court has addressed this issue in light of *Local 1064*, and it is unnecessary for the Court to consider the issue here because Plaintiffs' claim is barred even by the traditionally used six year statute of limitations.

action, if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Orzel v. Scott Drug Co.*, 449 Mich. 550, 538 (1995). Because Merlo's claims arise from his "knowing and voluntary" participation in an illegal conspiracy to evade income taxes, Miller Canfield argues that his damages flow from pleading guilty for participation in that conspiracy, and that, as such, he is barred from asserting a claim by the wrongful-conduct rule.

Plaintiffs do not rebut the argument that the wrongful-conduct rule applies but assert that this case falls within an exception, which provides that:

> even though a plaintiff has engaged in serious illegal conduct and the illegal conduct has proximately caused the plaintiff's injuries, a plaintiff may still seek recovery against a defendant if the defendant's culpability is greater than the plaintiff's culpability for the injuries, such as where the plaintiff has acted under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age.

*Id.* at 569 (internal quotations omitted). Plaintiffs assert that this exception applies because but for Defendants' legal advice contained in the opinion letter regarding the LOI insurance, Plaintiffs would not have undertaken any wrongful action.

Miller Canfield argues that this exception cannot apply because Merlo stated during his sentencing that "I absolutely understand that I have no one to blame but me for the position I'm in today," and thus, he has taken sole responsibility for his actions and cannot now claim that Defendants are more culpable. *See* Merlo Sentencing Transcript, ex. 10 at 33. Further, Miller Canfield argues that Merlo cannot assert that he is less culpable than Defendants because during Merlo's sentencing, the U.S. District Court for the Western District of Michigan stated that, although Merlo played a different role than others involved in the conspiracy, the Court was not convinced that Merlo was any less culpable than the

14

others who were involved, after sitting through four weeks of trial and reading the plea transcript twice.[11] *Id.* at 11.

Given these statements, it appears unlikely that the exception would apply in this case but because the claims are barred by the statute of limitations, it is unnecessary for the Court to decide this issue.[12]

## CONCLUSION

Plaintiffs claims for negligence, professional negligence, and fraud are barred, as a matter of law, by the statutes of limitations under Michigan law for legal malpractice and

---

[11] Another common law maxim, the doctrine of *in pari delicto,* will generally act to bar claims when a plaintiff's action is based on his own illegal conduct, and the defendant has participated equally in the illegal activity. "As between parties *in pari delicto*, that is equally in the wrong, the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them." *Orzel*, 449 Mich. at 558.

[12] Miller Canfield further argues that Merlo is judicially estopped from attempting to shift responsibility because in his plea agreement Merlo and the Government agreed to a downward departure for acceptance of responsibility, which was granted during sentencing. *Id.* at 13-14. Miller Canfield argues that he cannot proclaim to take responsibility for his guilt to procure a downward departure, and then shift blame in the instant case to benefit from an exception to the wrongful conduct rule. The purpose of the doctrine of judicial estoppel is to "protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal citations and quotation marks omitted). "Judicial estoppel prevents parties from playing fast and loose with the courts." *Id.* at 750 (internal citations omitted). When considering whether judicial estoppel applies, courts consider several factors including: whether the party's later position is clearly inconsistent with their previous position, whether the party successfully persuaded the court to accept their earlier position, and whether the party would derive an unfair advantage if not estopped. *Id.* at 750-51. This appears to be a case where judicial estoppel would likely apply. Merlo's acceptance of responsibility was credited by Judge Neff in the form of a downward departure on Merlo's sentencing. Merlo should not now be allowed to assert the opposite position, that he would not have undertaken any wrongful conduct had it not been for Defendants' legal advice, in order to prevent dismissal of his claims against defendant. To do so would undermine the integrity of the judicial process.

fraud. There are no material issues of fact in dispute as to the time line underlying the claims. Therefore, the Court grants summary judgment be granted in favor of Defendant, Miller Canfield.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that Defendant Miller, Canfield, Paddock & Stone's motion for summary judgment (docket no. 9) is **GRANTED**.

**SO ORDERED.**

       s/Stephen J. Murphy, III
       STEPHEN J. MURPHY, III
       United States District Judge

Dated: October 25, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 25, 2010, by electronic and/or ordinary mail.

       s/Alissa Greer
       Case Manager